*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0012P (6th Cir.)
File Name: 04a0012p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————

JOANNE HEDRICK,
　　　*Plaintiff-Appellant,*

　　　*v.*　　　　　No. 02-3898

WESTERN RESERVE CARE
SYSTEM and FORUM HEALTH,
　　　*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-00630—Lesley Brooks Wells, District Judge.

Argued: October 21, 2003

Decided and Filed: January 9, 2004

Before: MARTIN and SUTTON, Circuit Judges; MILLS,
District Judge.[*]

———————

[*] The Honorable Richard Mills, United States District Judge for the
Central District of Illinois, sitting by designation.

———————

## COUNSEL

**ARGUED:** Ira J. Mirkin, GREEN, HAINES, &
SGAMBATI, Youngstown, Ohio, for Appellant. Domenic A.
Bellisario, LAW OFFICE, Pittsburgh, Pennsylvania, for
Appellee. **ON BRIEF:** Ira J. Mirkin, Barry R. Laine,
GREEN, HAINES, & SGAMBATI, Youngstown, Ohio, for
Appellant. Domenic A. Bellisario, LAW OFFICE,
Pittsburgh, Pennsylvania, for Appellee.

———————

## OPINION

———————

RICHARD MILLS, District Judge.

A suit alleging both *age* and *disability* discrimination.

Joanne Hedrick worked for Western Reserve Care System
as a registered nurse for twenty-two years before taking a
medical leave of absence. When she attempted to return to
work, Hedrick alleged that Western Reserve Care System and
its holding company, Forum Health, discriminated against her
on account of her age, in violation of the Age Discrimination
in Employment Act (29 U.S.C. § 621 *et seq.*), and on account
of her disability, in violation of the Americans with
Disabilities Act (42 U.S.C. § 12101 *et seq.*) and Ohio Revised
Code Chapter 4112.

Upon completion of discovery, the district court granted
summary judgment in Western Reserve Care System's favor
on all three of Hedrick's claims against it and denied
Hedrick's motion for partial summary judgment.

We **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Joanne Hedrick was born on June 10, 1948. Hedrick received an associate's degree in nursing in 1973 and, thereafter, became employed as a general duty staff nurse by the Youngstown Hospital Association, *i.e.*, the predecessor of Western Reserve Care System ("WRCS"). As a general duty staff nurse, Hedrick performed typical bedside nursing functions for WRCS.

During the late 1980's, Hedrick was diagnosed as having osteoarthritis in her left knee. In the early 1990's, her condition progressed, and Hedrick was diagnosed as having and was treated for osteoarthritis in both knees. Since her initial diagnosis, Hedrick has been treated by her family physician, Dr. L. Kevin Nash, and by her orthopedic surgeon, Dr. Raymond Duffett.

On December 1, 1995, Hedrick fell and broke her leg which necessitated surgery (performed by Dr. Duffett) and a medical leave of absence from work in order to recuperate. On April 29, 1996, Dr. Duffett released Hedrick to return to work without any restrictions effective June 1, 1996.

However, on May 3, 1996, Hedrick visited Dr. Nash and expressed her reservations about her ability to return to work as a general duty staff nurse because she was concerned that she would be unable to perform her duties. Although he did not initially share Hedrick's reservations regarding her ability to return to work as a general duty staff nurse, Dr. Nash subsequently reversed his opinion and agreed that Hedrick would be unable to resume her bedside nursing duties. On July 1, 1996, Dr. Nash wrote a letter to Sue Yoder, WRCS's director of nursing, in which he reported that "Ms. Joanne Hedrick has been making a very slow recovery after her devastating fracture of the left femur. Joanne has shared with me that she does not believe that she is going to be able to

return to bedside nursing, and frankly I share her reservations."

On July 16, 1996, Hedrick underwent a functional capacity evaluation in order to determine her ability to return to work and, if it was determined that she was able to return to work, the limitations, if any, she would have. This evaluation indicated that Hedrick would be unable to return to her previous position as a general duty staff nurse at WRCS because of her physical limitations in bending and lifting and due to the pain in her knees. As a result of this evaluation, Dr. Nash wrote to Jon R. Steen, WRCS's human resources director, on August 7, 1996, and requested that Hedrick be considered for other positions.

In July or August 1996, Hedrick asked to be placed upon WRCS's list of employees who claimed to have permanent work restrictions.[1] This list was commonly referred to as the "ADA list." Once an employee was placed upon the ADA list, WRCS attempted to find suitable employment for those employees who could no longer perform the duties of their regular positions. On September 24, 1996, Dr. Nash wrote a letter to Steen regarding Hedrick's precise limitations and reported that Hedrick was able to conduct daily activities for short intervals, to walk short distances, and to stand, drive, and perform desk work for short periods of time. Upon receipt of Dr. Nash's letter and pursuant to her request, WRCS placed Hedrick on the ADA list, and subsequently, WRCS began identifying job vacancies which corresponded with Hedrick's background, skills, and medical restrictions.

In late September 1996, Ann Marie Ondo, WRCS's employment coordinator, informed Hedrick of an opening as a referral center scheduler. Hedrick interviewed for the

---

[1] WRCS would only place an employee on the ADA list upon that employee's request.

position with Lorraine Nelson and Mary Pat Foley, and during the interview, one of the interviewers asked her about her physical limitations. Hedrick responded that she would be able to fully perform the job's requirements. However, upon learning of the salary, Hedrick indicated that she was not interested in the position because the salary was too low. Although it is unclear whether the position was formally offered to Hedrick, it is clear that Hedrick understood that the job was hers if she wanted it and that she specifically told Nelson and Foley that she would not take the position.

Later that same month, Ondo informed Hedrick of an open quality assurance position. Hedrick interviewed with Nelson for the position in November 1996, and, again, Nelson asked her about her physical limitations because the position involved some walking and lifting. Hedrick responded that she did not believe that her physical limitations would be an issue and that, although she may not walk as fast as others, she could get from point "A" to "B." Ultimately, WRCS selected an applicant other than Hedrick for the quality assurance position.

In January 1997, Ondo informed Hedrick of four case manager vacancies in the department of medicine. Hedrick interviewed for the positions with Dr. Paul Bunn who also asked her about her physical limitations because the positions entailed a fair amount of walking. Hedrick, again, responded that she would have no problems fulfilling the duties of the positions, and Dr. Bunn assured her that she would not be hired for her leg work and that the hiring decision would be based upon experience and knowledge. In February 1997, Ondo informed Hedrick that the four case manager positions were filled by other more qualified applicants.

About a week later, Ondo informed Hedrick that another qualify assurance position was vacant, and Hedrick expressed an interest in the job. Although Hedrick was initially scheduled for an interview in March 1997, Nelson advised her

that she would not have to interview for the position because she had recently interviewed for another quality assurance position. In late March or early April 1997, Ondo advised Hedrick that she had not been selected for the position. Thereafter, Hedrick and Ondo continued to communicate regarding various vacancies at WRCS, but Hedrick was not interested in any of these vacancies.

In August 1997, Carol Olson contacted Hedrick regarding a temporary assignment as an admissions nurse. Hedrick accepted the position and returned to work with WRCS on August 25, 1997, at no loss of earnings or benefits.

After receiving a right to sue letter from the Equal Employment Opportunity Commission, Hedrick filed a timely suit against WRCS and its parent corporation, Forum Health, in federal district court on March 17, 1999. Hedrick's Complaint contained three Counts: Count I alleged a cause of action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*; Count II alleged a cause of action pursuant to Ohio Revised Code Chapter 4112 which prohibits discrimination on the basis of handicap; and Count III alleged a cause of action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*[2]

At the close of the discovery period, Hedrick moved for partial summary judgment on the issues of whether she was "disabled" within the meaning of the ADA and whether WRCS had failed to reasonably accommodate her disability. WRCS and Forum Health, in turn, moved for summary judgment on each of Hedrick's claims against them. The district judge referred the cross-motions for summary judgment to a magistrate judge who filed a report and

_____

[2]Hedrick filed an Amended Complaint on January 14, 2000, which did not alter her three causes of action.

recommendation which recommended that summary judgment be entered in WRCS and Forum Health's favor on all three of Hedrick's claims and also recommended that Hedrick's motion for summary judgment be denied.

Hedrick filed objections to the magistrate judge's report and recommendation with the district judge, but the district judge denied her objections, adopted the magistrate judge's report and recommendation, denied her motion for summary judgment, and entered summary judgment in WRCS and Forum Health's favor on all three Counts of Hedrick's Amended Complaint. Thereafter, Hedrick filed a timely notice of appeal.

## II. ANALYSIS[3]

### A. *STANDARD OF REVIEW*

We review a district court's order granting summary judgment *de novo*. *Equitable Life Assurance Soc'y v. Poe*, 143 F.3d 1013, 1015 (6th Cir. 1998). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477

---

[3]Hedrick did not file an objection with the district court to the magistrate judge's recommendation that Forum Health was entitled to summary judgment or to the magistrate judge's finding that she had waived her disability claim based upon obesity by failing to assert it at the summary judgment stage. Likewise, Hedrick has not challenged on appeal the district court's dismissal of Forum Health or her disability claim based upon obesity, and thus, those issues are waived and are not before the Court.

U.S. 317, 323 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a fact is "genuine" requires consideration of the applicable evidentiary standard. *Id.* A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Id.* "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001)(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

As for Hedrick's motion for partial summary judgment, an order denying summary judgment ordinarily constitutes a non-appealable, interlocutory order. *Pacific Union Conference of Seventh-Day Adventists v. Marshall*, 434 U.S. 1305, 1306 (1977). However, because Hedrick's appeal is from a final judgment, the denial of her motion for partial summary judgment is reviewable. *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988, 992 (6th Cir. 1999). "We . . . review *de novo* a district court's order denying summary judgment, if the denial is based on purely legal grounds. If the denial is based on the district court's finding of a genuine issue of material fact, however, we review for abuse of discretion a district court's order denying summary judgment." *Black v. Roadway Express, Inc.*, 297 F.3d 445, 448 (6th Cir. 2002)(internal citations omitted).

## B.   *ADA CLAIM*[4]

The ADA provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must establish that: "1) he is an individual with a disability;[5] 2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and 3) he was [not hired] solely by reason of his handicap." *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996) (footnote added)(citations omitted).   A plaintiff may prove that he was discriminated against based upon his disability either through direct or indirect evidence. *Id*.

We have previously explained that in cases where the plaintiff presents direct evidence of disability discrimination:

(1) The plaintiff bears the burden of establishing that he or she is disabled.  (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the

---

[4]Because the essential elements of an ADA claim and a claim under the Ohio handicap discrimination statute are identical, our analysis of Hedrick's ADA claim also resolves her state law claim. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 938-39 (6th Cir. 2000); *Hoffman v. Fidelity Brokerage Servs., Inc.*, 959 F. Supp. 452, 457 n. 1 (S.D. Ohio 1997).

[5]Under the ADA, the term "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 193 (2002).

position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation.  (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Monette*, 90 F.3d at 1186.  When a plaintiff seeks to establish his case indirectly, however, the *McDonnell Douglas* burden-shifting approach applies so that the

plaintiff may establish a *prima facie* case of discrimination by showing that: (1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. The defendant must then offer a legitimate explanation for its action.   If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. Under this scheme, the plaintiff retains the ultimate burden of persuasion at all times.

*Id*. at 1186-87; *Walsh v. United Parcel Serv.*, 201 F.3d 718, 724-25 (6th Cir. 2000).

As this Court recognized in *Kline v. Tennessee Valley Auth.*, 128 F.3d 336 (6th Cir. 1997), "[t]he direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both.  If a plaintiff can produce direct evidence of discrimination then the *McDonnell Douglas-Burdine* paradigm is of no consequence.  Similarly, if a plaintiff attempts to prove its

case using the *McDonnell Douglas-Burdine* paradigm, then the party is not required to introduce direct evidence of discrimination." *Id*. at 348-49.

As the district court correctly noted, the crux of Hedrick's Amended Complaint against WRCS is that WRCS unlawfully discriminated against her by failing to award her one of the four case manager positions or one of the two quality assurance positions for which she applied. Hedrick argues that she established her *prima facie* case of disability discrimination under the ADA *via* both the direct and the indirect method.

### 1.  *Direct Evidence*

### a.  *Arguments*

As for her direct evidence of disability discrimination, Hedrick relies upon the testimony of Dr. Nash who testified that Nelson "expressed concern to me that she felt that [Hedrick's] medical condition would prohibit her from being able to perform this job as case manager." Hedrick contends that the district court erred in rejecting this direct evidence of disability discrimination–as grounds for denying WRCS's motion for summary judgment–for two reasons.

*First*, Hedrick asserts that the district court erred in requiring her to establish that she was denied one of the vacant job positions for which she applied solely because of unlawful disability discrimination. Although she acknowledges that *Monette* and its progeny hold that an ADA plaintiff must establish that the adverse employment action occurred "solely by reason of his handicap," *Monette*, 90 F.3d at 1178, Hedrick claims that this holding is no longer good law. Rather, Hedrick argues that all she needed to show in order to establish her *prima facie* case under the ADA was that discriminatory animus played a part in WRCS's hiring decision, not that it was the sole reason.

*Second*, Hedrick contends that, contrary to the district court's conclusion, Dr. Nash's testimony regarding Nelson's statement to him created a genuine issue of material fact sufficient to deny WRCS's motion for summary judgment. Hedrick asserts that the district court erred in holding that the direct evidence standard requires a defendant's admission in order to constitute direct evidence of disability discrimination. On the contrary, Hedrick claims that this Court's opinion in *Ross v. Campbell Soup Co.*, 237 F.3d 701 (6th Cir. 2001), establishes that isolated comments may constitute direct evidence of disability discrimination sufficient to defeat a defendant's summary judgment motion. Accordingly, Hedrick asks us to reverse the district court's grant of summary judgment against her.

### b.  *Conclusions*

We find that the district court did not err in finding Hedrick's direct evidence of disability discrimination insufficient to withstand WRCS's summary judgment motion. While it is true (as cited by Hedrick) that some of our sister circuits have held that an ADA plaintiff need not demonstrate that disability was the sole reason for the adverse employment action but only that it played a motivating role in the decision, *e.g.*, *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 337 (2d Cir. 2000), *Monette* and *Walsh* remain good law in this circuit, and we are bound by this authority. *See McLeod v. Parsons Corp.*, 2003 WL 22097841, * 11 (6th Cir. Sept. 5, 2003)("We decline McLeod's request that this panel permit plaintiffs to recover under the ADA in mixed motive cases. Adopting the approach followed by several other circuits would require the panel to make a substantial departure from this Court's holdings in *Walsh* and *Monette*. Under *Salmi v. Secretary of Health and Human Services*, 774 F.2d 685, 689 (6th Cir. 1985), one panel of this Court cannot reverse the holding of another panel unless there is a contrary Supreme Court decision or *en banc* decision by this Court. *Id*."). Accordingly, the district court did not err in requiring Hedrick

to show that her disability was the sole reason for WRCS's decision not to hire her for one of the four case manager positions or one of the two quality assurance positions for which she applied.

Furthermore, we agree that *Ross* is distinguishable from the instant case. In *Ross*, we held that the district court erred in dismissing, as isolated and insufficient to constitute direct evidence of discriminatory animus, a memorandum which referred to the plaintiff as a "back case." *Ross*, 237 F.3d at 706-07. Although it is true that the *Ross* court concluded "that the district court too easily dismissed the 'back case' memo as direct evidence of discrimination by the employer," *id*. at 707, when viewed in the entire context of the case and of the court's opinion, it is clear that the back memorandum was but one event in a series of comments and reports which, when taken cumulatively, was sufficient to create a genuine issue of material fact precluding summary judgment. Here, Hedrick has tendered no series of comments or reports which would indicate WRCS's discriminatory animus, and thus, Nelson's comment to Dr. Nash may properly be characterized as isolated and insufficient to create a genuine issue of material fact regarding WRCS's discriminatory intent.

In addition, the plaintiff in *Ross* tendered the memorandum in order to establish that his employer regarded him as being disabled, and the *Ross* court held that the memorandum, when viewed in combination with other evidence, was sufficient to create a genuine issue of material fact with regard to that element. *See id*. at 706 ("We conclude that Ross has presented sufficient evidence to create a genuine issue of material fact concerning his claim that the company regarded him has [*sic*] a person with a disability within the meaning of the Act. Perhaps the piece of evidence most indicative of this fact is the 'back case' memo . . . ."); *see also id*. at 707 ("That the note's author would think to identify Ross with the scrawled post-script 'back case' demonstrates that there is at least a genuine issue of material fact that Campbell Soup Co.

regarded Ross through the lens of his medical condition."). In the instant case, Hedrick tendered Nelson's statement to Dr. Nash in an attempt to tender direct evidence of WRCS's discriminatory animus sufficient to establish her *prima facie* case under the ADA, not merely to establish that WRCS regarded her as being disabled.[6]

Finally, the *Ross* memorandum is distinguishable in that the memorandum's tone was clearly discriminatory, *see id*. ("Not only does the note identify Ross as a 'problem person,' a comment which cannot be taken in a positive light, but it also identifies him as a 'back case.' The ADA was enacted, in part, to eliminate the sort of stereotyping that allowed employers to see their employees primarily as their disabilities and not as persons differently abled from themselves."), while Nelson's comment to Dr. Nash was clearly an expression of concern for Hedrick's ability to perform the jobs' requirements which included a fair amount of walking. Accordingly, we agree with the district court that Hedrick failed to tender any direct evidence in support of her ADA claim against WRCS.

### 2. *Indirect Evidence*

### a. *Arguments*

As for her indirect evidence of disability discrimination, Hedrick argues that only the first two elements of her *prima facie* case are in dispute because it is undisputed that she satisfied elements three, four, and five. She suffered an adverse employment decision (*i.e.*, she was not hired for one of the four vacant case manager positions and/or for one of the two quality assurance positions); WRCS knew of her disability; and the positions remained open while WRCS

---

[6] In any event, as will be discussed *infra*, Hedrick has failed to show that she is a "qualified individual with a disability." 42 U.S.C. § 12111(8).

sought other applicants, and non-disabled applicants were chosen for the positions rather than her. Hedrick asserts that the district court erred in concluding that she did not show the existence of a genuine issue of material fact as to the first two elements of her *prima facie* case, and therefore, she asks us to reverse the district court's summary judgment order.

Regarding the first element of her *prima facie* case, Hedrick argues that her osteoarthritis in her knees constitutes a "disability," as that term is defined in the ADA, (1) because her condition is a physical impairment which substantially limits her major life activities of walking and working; (2) because she has a record of having such an impairment; and (3) because WRCS regarded her as having a disabling impairment. 42 U.S.C. § 12102(2); *Toyota Motor Mfg.*, 534 U.S. at 193.

*First*, Dr. Nash testified that, in his medical opinion, Hedrick's osteoarthritis in her knees rendered her disabled within the meaning of the ADA and that her condition is severe and permanent. Dr. Nash also testified that Hedrick could not perform a broad range of nursing jobs due to her limited ability to work and walk– both of which are considered to be major life activities under the ADA.

*Second*, Hedrick contends that Dr. Nash's correspondence with WRCS, her functional capacity evaluation, and the fact that she was on WRCS's ADA list establish that she had a record of having a disabling impairment and, taken individually or collectively, constitute sufficient evidence to create a genuine issue of material fact as to whether she is disabled.

*Third*, Hedrick claims that WRCS regarded her as having a disabling impairment and that the district court erred in holding otherwise. In support of her argument, Hedrick notes that WRCS agreed that she could not resume her general duty staff nurse position due to her condition, that WRCS placed

her on its ADA list, and that WRCS asked her about her physical limitations during several of her interviews. Accordingly, Hedrick argues that a genuine issue of material fact existed regarding whether she was "disabled" within the meaning of the ADA and that the district court committed reversible error in finding her not to be disabled.

Regarding the second element of her *prima facie* case, Hedrick contends that WRCS did not provide her with a reasonable accommodation as required under the ADA. Specifically, Hedrick claims that the district court erred in concluding that the referral center scheduler position was a reasonable accommodation which satisfied WRCS's obligations under the ADA and, as a result, erred in ruling that she was not "a qualified individual with a disability."

In making this finding, Hedrick asserts that the district court resolved disputed issues of fact which were not properly determinable on summary judgment: the district court found that WRCS offered Hedrick the referral center scheduler position, that she refused it, and that the referral center scheduler position was a reasonable accommodation. Because genuine issues of material fact existed regarding the first two elements of her *prima facie* case, Hedrick argues that the district court committed reversible error in entering summary judgment against her on her ADA claim.

b.   *Conclusions*

We find that the district court did not err in entering summary judgment in WRCS's favor because Hedrick did not satisfy her *prima facie* case of disability discrimination under the *McDonnell Douglas* burden-shifting method. In reaching this conclusion, we need not resolve the thornier issue of whether Hedrick was "disabled" under the ADA because it is clear that, even assuming that she was disabled, she was not a qualified individual with a disability. Accordingly, we affirm the district court.

"A 'qualified individual with a disability' is defined as 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Black*, 297 F.3d at 448 (quoting 42 U.S.C. § 12111(8)); *see* 29 C.F.R. § 1630.2(m)("Qualified individual with a disability means an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position."). As we have previously explained:

> To recover under the ADA, a plaintiff must do more than show that he is "disabled" within the meaning of the statute. He must also establish that he is a "qualified individual with a disability" by showing: (1) that he "satisfies the prerequisites for the position [he holds or desires], such as possessing the appropriate educational background, employment experience, [and] skills . . ."; and (2) that he "can perform the essential functions of the position held or desired, with or without reasonable accommodation."

*Burns v. Coca-Cola Enter., Inc.*, 222 F.3d 247, 256 (6th Cir. 2000)(quoting *Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 676 (7th Cir. 1998)).

"A disabled employee who claims that he or she is otherwise qualified with a reasonable accommodation 'bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable.'" *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 633-34 (6th Cir. 1998)(quoting *Monette*, 90 F.3d at 1183). An employer, then, has the burden of persuasion to show that an accommodation would impose an undue hardship. *Id*. at 634; *Monette*, 90 F.3d at 1184.

Although a "reasonable accommodation" may include reassignment to a vacant position, 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii), an employer need not reassign a disabled employee to a position for which he is not qualified, nor is the employer required to waive legitimate, non-discriminatory employment policies or displace other employees' rights in order to accommodate a disabled employee. *Burns*, 222 F.3d at 257. On the contrary,

> [a]ccording to the regulations, an employer need only reassign a disabled employee to a vacant position. Employers are not required to create new jobs, displace existing employees from their positions, or violate other employees' rights under a collective bargaining agreement or other non-discriminatory policy in order to accommodate a disabled individual.

*Id*. (internal citations omitted).

Furthermore, in order to satisfy its duty under the ADA, an employer is only required to transfer an employee to a position comparable to the employee's prior position. *Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 728 n. 3 (6th Cir. 2000). "The regulations instruct that employers 'should reassign the individual to an equivalent position, in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time,' and should only reassign an individual to a lower graded position if the individual cannot be accommodated in an equivalent position. 29 C.F.R. pt. 1630, App. § 1630.2(o)." *Id*. The ADA does not require an employer to offer an employee a promotion as a reasonable accommodation, *Cassidy*, 138 F.3d at 634, and "an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided." *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800-01 (6th Cir. 1996)(citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68-69 (1986)). In fact, where a comparable position is not vacant,

an employer's obligation to reassign an employee may include an assignment to a position with a lower grade of pay if the employee meets the job's qualifications. *Cassidy*, 138 F.3d at 634.

Finally, the regulations indicate that, although an employee is not required to accept an offered accommodation, if an individual rejects a reasonable accommodation, the individual will no longer be considered a qualified individual with a disability. *Hoskins*, 227 F.3d at 728 n. 3; *Hankins*, 84 F.3d at 801. Specifically, 29 C.F.R. § 1630.9(d) provides:

> A qualified individual with a disability is not required to accept an accommodation, aid, service, opportunity or benefit which such qualified individual chooses not to accept. However, if such individual rejects a reasonable accommodation, aid, service, opportunity or benefit that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered a qualified individual with a disability.

*Id*.

In the instant case, we agree with the district court that the referral center scheduler position was a reasonable accommodation and that Hedrick cannot be considered a qualified individual with a disability based upon her rejection of that position. As noted *supra*, although it is unclear whether WRCS formally offered the position to Hedrick, it is clear, based upon her own deposition testimony, that Hedrick understood that the job was hers if she wanted it and that she preemptively rejected the position by informing Nelson and Foley that she would not take the position because of its low salary:

A. I stated that I expected the cut in salary when I came back; but I did not expect that drastic of a cut when I came back.

\* \* \*

A. It became a consensus at that point in time that I was overqualified. And I told them I would not take the position.

Q. You said you would not take the position had they offered it to you?

A. I assumed if they would have offered to me that with my – I just made the statement that I wasn't interested in that position at that point in time because I did not think it was for me.

Q. And is the reason that you didn't think it was for you because of the salary?

A. Yes.

Thus, although Hedrick may have personally believed that she was overqualified for the position and that the salary was too low, WRCS satisfied its obligation under the ADA by offering a reasonable accommodation when it made the referral center scheduler position available to her.

In addition, we agree with the district court that the referral center scheduler position was comparable to her previous position and that the four case manager positions and the two quality assurance positions were neither vacant nor comparable. Although Hedrick asserts that she was overqualified for the referral center scheduler position because she was a registered nurse, WRCS eventually filled the position with a registered nurse who, like Hedrick, was coming off of a disability leave.

Likewise, although it is true that one of the quality assurance positions became available just nine days after the referral center scheduler position became available, it is also true that the quality assurance positions were not comparable to her previous position because they were salaried, non-bargaining positions which would have constituted a promotion. As such, WRCS had no duty to offer the quality assurance positions to Hedrick. *Cassidy*, 138 F.3d at 634. As for the case manager positions, although the jobs would not have constituted a promotion, the record reflects that they did not become available until well after the referral center scheduler position became available, and Hedrick presented no evidence to establish that WRCS knew that these positions would soon become available when it offered her the referral center scheduler position.[7]

Finally, contrary to Hedrick's argument, her disability did not provide her with a preference in WRCS's hiring practices. Although WRCS may have had an obligation to reassign her to a vacant position for which she was qualified, the ADA does not mandate that she be afforded preferential treatment. *E.g.*, *Burns*, 222 F.3d at 258 (quoting *Dalton*, 141 F.3d at 679)("Allowing Burns to recover despite his failure to abide by KCC's non-discriminatory policy requiring him to apply for a transfer to a new position within his restrictions would 'convert a nondiscrimination statute into a mandatory preference statute, a result which would be inconsistent with the nondiscriminatory aims of the ADA.'"); *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir. 1995)("we do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled. It prohibits employment

---

[7]WRCS offered Hedrick the referral center scheduler position in September 1996, and the case manager positions became available in December 1996.

discrimination against qualified individuals with disabilities, no more and no less."); *Terrell v. USAir, Inc.*, 132 F.3d 621, 627 (11th Cir. 1998)("We cannot accept that Congress, in enacting the ADA, intended to grant preferential treatment for disabled workers.").

Accordingly, we find that the district court correctly entered summary judgment in WRCS's favor on Hedrick's ADA claim because she failed to tender direct evidence of disability discrimination sufficient to withstand WRCS's summary judgment motion, because she cannot be considered a qualified individual with a disability based upon her rejection of the proffered referral center scheduler position, and because WRCS satisfied its obligations under the ADA of offering a reasonable accommodation to Hedrick by making the referral center scheduler position available to her.

## C. *ADEA CLAIM*

The ADEA provides in relevant part: "It shall be unlawful for an employer– (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Like the ADA, a plaintiff attempting to establish a claim under the ADEA may do so by producing either direct evidence, or he may rely upon the *McDonnell Douglas* burden-shifting method. *Kline*, 128 F.3d at 348-49; *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 n. 4 (6th Cir. 1992).

Moreover, like her ADA claim, the gist of Hedrick's ADEA claim is that WRCS discriminated against her by failing to award her one of the case manager positions and/or one of the

quality assurance positions for which she applied.[8]  However, unlike her ADA claim, Hedrick acknowledges that she cannot produce any direct evidence in support of her ADEA claim. Accordingly, Hedrick has attempted to establish her ADEA claim pursuant to the indirect method.

In order to establish a *prima facie* case of age discrimination pursuant to the *McDonnell Douglas* burden-shifting method,

> a plaintiff must establish that: (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) after he was rejected, a substantially younger applicant was selected. *See Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 341 (6th Cir. 1998).  If the plaintiff successfully establishes a *prima facie* case, the burden of production shifts to the defendant to articulate a non-discriminatory reason for its action. *See id*.  If the defendant comes up with such a reason, the plaintiff must then demonstrate by a preponderance of the evidence that the defendant's proffered reason was a pretext for age discrimination. *See id*.

*Burzynski v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001). Moreover,

> [i]n *Manzer*, a case brought under the ADEA, this Court explained what evidence a plaintiff must adduce in order to show that an employer's alleged legitimate reason for its adverse action against the plaintiff was a mere pretext:

---

[8]WRCS filled one of the case manager positions with an individual older than Hedrick, and so, she does not complain of the denial of this position with regard to her ADEA claim.

> To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge.  The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are factually false.  The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff.  These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity."

> The second showing, however, is of an entirely different ilk.  There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal.  The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant.  In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or a coverup.

Accordingly, we hold that, in order to make this type of rebuttal showing, the plaintiff may not rely simply upon his *prima facie* evidence but must, instead, introduce additional evidence of age discrimination.

*Manzer*, 29 F.3d at 1084.

*Pennington v. Western Atlas, Inc.*, 202 F.3d 902, 909-10 (6th Cir. 2000).

In the case *sub judice*, the district court found (and, in fact, WRCS conceded) that Hedrick had established a *prima facie* case of age discrimination. WRCS, then, offered a legitimate, non-discriminatory reason for not hiring Hedrick for one of the vacant case manager positions and/or quality assurance positions, *i.e.*, WRCS asserted that it chose better qualified candidates than Hedrick to fill the vacant positions. Finally, the district court found that Hedrick had failed to show that WRCS's proffered reason for not hiring Hedrick was pretextual.

1. *Arguments*

Hedrick argues that the district court's finding regarding pretext was erroneous. Specifically, Hedrick contends that the district court improperly applied the United States Supreme Court's holding in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), and that the district court disregarded the evidence of pretext which she tendered, choosing instead to blindly accept WRCS's subjective determination that the successful applicants were better qualified than she was without conducting any analysis of that claim.[9] Accordingly, Hedrick asks us to reverse the district

---

[9]Hedrick's evidence of pretext consisted of the following: (1) the interviewers' memories had faded, and no notes existed which revealed how they came to their decisions; (2) it is unclear who made the employment decisions; (3) her own testimony established that she was the

court's summary judgment order with regard to her ADEA claim because genuine issues of material fact exist as to whether WRCS's proffered reason for refusing to hire her for one of the vacant case manager and/or quality assurance positions was pretextual.

2. *Conclusions*

We find that the district court did not err in holding that Hedrick failed to demonstrate, by a preponderance of the evidence, that WRCS's proffered reason for not hiring her for one of the vacant case manager and/or quality assurance positions was a pretext for age discrimination and, therefore, did not err in entering summary judgment against Hedrick on her ADEA claim.

Contrary to her assertion otherwise, we do not believe that the district court improperly applied the Supreme Court's holding in *Reeves* by requiring her to produce additional evidence of discrimination beyond the evidence necessary to cast doubt on the genuineness of WRCS's asserted reason for not hiring her. A close reading of the district court's summary judgment order reveals that the district court did not require Hedrick to satisfy a "pretext plus" standard; rather, the district court specifically stated that "[e]ven if WRCS's proffered reason were disbelieved, the evidence Hedrick presents does not support an inference that age discrimination was the motivating factor in WRCS's hiring decision." Thus, the district court concluded that, even though Hedrick had established a *prima facie* case under the ADEA, and even if the district court assumed that Hedrick provided sufficient evidence to show that WRCS's asserted justification was false, Hedrick's evidence was insufficient to avoid summary judgment, and the Supreme Court in *Reeves* anticipated just

---

most qualified candidate; and (4) WRCS hired individuals younger than she.

such a scenario: "Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id*. at 148.

As for Hedrick's argument that the district court improperly disregarded her evidence of pretext, it is true that the district court could have done a more thorough job of discussing Hedrick's proffered evidence, especially given the fact that WRCS's justification for its employment decision was subjective, and subjective reasons provide "ready mechanisms for discrimination." *Grano v. Department of Dev. of City of Columbus*, 699 F.2d 836, 837 (6th Cir. 1983). However, we ultimately agree with the district court that Hedrick's evidence of pretext was insufficient to withstand summary judgment.

"The isolated fact that a younger person eventually replaces an older employee is not enough to permit a rebuttal inference that the replacement was motivated by age discrimination." *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 267 (6th Cir. 1986)(citing *LaMontagne v. American Convenience Prods., Inc.*, 750 F.2d 1405, 1413 (7th Cir. 19084). Moreover, Hedrick's subjective view of her qualifications in relation to those of the other applicants, without more, cannot sustain a claim of discrimination. *Johnson v. United States Dep't of Health and Human Servs.*, 30 F.3d 45, 47-48 (6th Cir. 1994); *see Mitchell*, 964 F.2d at 584 (holding that the plaintiff's subjective skepticism regarding the truth of an employer's representation does not raise a triable issue as to pretext).

Finally, "[a]lthough the reason[] proffered by [WRCS] involve[d] subjective factors, [it was] clearly sufficient to dispel the inference of discrimination and to afford [Hedrick] a 'full and fair opportunity' to show pretext." *Daniels v. Board of Educ. of Ravenna City Sch. Dist.*, 805 F.2d 203, 209 (6th Cir. 1986)(citing *Page v. Bolger*, 645 F.2d 227, 228, 230

(4th Cir. 1981)(*en banc*)). As we have oft times repeated, "it is inappropriate for the judiciary to substitute its judgment for that of management." *Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000); *see Krenik v. County of Le Sueur*, 47 F.3d 953, 960 (8th Cir. 1995)(holding that federal courts do not sit as a "super-personnel department"); *see also Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)(same). "Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994) (quoting *Elrod*, 939 F.2d at 1470); *see Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999)("Our role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments.").

Accordingly, we find that the district court correctly entered summary judgment in WRCS's favor on Hedrick's ADEA claim because she failed to demonstrate, by a preponderance of the evidence, that WRCS's proffered reason for not hiring her for one of the vacant case manager and/or quality assurance positions was a pretext for age discrimination.

## III. CONCLUSION

Accordingly, for the reasons set forth above, we **AFFIRM** the district court's grant of summary judgment for WRCS *in toto*. Because we affirm the district court's grant of WRCS's motion for summary judgment, we also **AFFIRM** the district court's denial of Hedrick's motion for partial summary judgment.