CLAY, Circuit Judge,
dissenting.
Bridget Ray was a qualified African-American applicant who applied for a promotion to the position of Court Clerk Coordinator at the Oakland County Circuit Court. Construing the facts in the light most favorable to her, Ray was passed over for the position for someone who did not facially meet the job’s qualifications, and the curious circumstances of the application process and shifting rationales for the position criteria most valued by Defendant indicate that Defendant’s non-discriminatory reason for not promoting Ray may have been pretextual. For these reasons, I respectfully dissent.
The majority’s opinion lays out the relevant facts as stated by the parties but fails to present them in a light most favorable to Plaintiff, as required on summary judgment. The majority seems to accept as true everything that Defendant’s various witnesses say and glosses over the irregu *882 larities of the hiring process. The position of clerk court coordinator was posted as a merit system job. Plaintiff, a long-time Probate Court employee, applied for the job along with sixteen other people. Jennifer Clark, supervisor of clerk support, decided to interview five applicants, all of whom were white and had inferior educational credentials to Plaintiff. Two of the women, including Laura Hutson who was eventually hired, did not facially meet the educational requirements of the job posting. Following the interviews, Defendant decided to hire Hutson but determined that she was ineligible for the position because she was not a merit system employee. To further its objective of selecting Hutson, Defendant reposted the position as “open competitive examination.” More than 150 people applied. Defendant asserts that it reposted the position in an effort to make all circuit and probate employees eligible, but when human resources forwarded the names of the thirteen applicants purportedly most qualified, a list that included Hutson, Defendant decided not to interview any new applicants and merely hired Hutson.
As the majority notes, this case deals with indirect evidence of racial discrimination and should be analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). While the district court held that Ray did not present a prima facie case, the majority does not reach that issue and instead rests its holding on its determination that Ray did not demonstrate pretext. Ray undoubtedly made out a prima facie case for racial discrimination—which the district court failed to recognize because of the improper weight it accorded to Defendant’s evidence. Furthermore, I disagree with the majority’s pretext analysis and find that the irregularities of the application process and Defendant’s shifting emphasis on the importance of docket management experience raises issues that should be decided by a jury.
A. Defendant Established a Prima Facie Case
To establish a prima facie case for failure to promote, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion, (3) she was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiffs request for the promotion was denied. Nguyen v. City of Cleveland, 229 F.3d 559, 562-63 (6th Cir.2000). Both parties agree that Ray is part of a protected class and that she was considered for and denied the promotion. While Defendant disputes whether Ray actually applied, I agree with the majority’s determination that Ray’s actions in applying for the job were sufficient.
The district court found against Ray on the similarly situated prong by reading the similarly situated criteria way too broadly and by uncritically accepting Defendant’s own rationale for its actions. “The burden of establishing a prima facie case of disparate treatment is not onerous.” Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The requirement of making out a prima facie case is not “meant to stymie plaintiffs, but simply serves to ‘bring the litigants and the court expeditiously and fairly to the ultimate question.’ ” Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 660 (6th Cir.2000) (quoting Burdine, 450 U.S. at 253, 101 S.Ct. 1089). “An exact correlation with the comparable employee is not required.” Barnes v. City of Cincinnati, 401 F.3d 729, 737 (6th Cir.2005).
*883 The district court’s decision made two erroneous determinations on the issue of whether the two individuals being compared were “similarly situated.” First, it determined that the different jobs held by Hutson and Ray at the time they applied meant that they were not similarly situated. Second, it impermissibly relied on the non-discriminatory reasons proffered by Defendant that should be considered at the pretext stage of the analysis.
The first mistake is based on too broad an extension of Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796 (6th Cir.1994). That case held that: “In order for two or more employees to be considered similarly-situated for the purpose of creating an inference of disparate treatment in a Title VII case, the plaintiff must prove that all of the relevant aspects of his employment situation are ‘nearly identical’ to those of the ... employees who he alleges were treated more favorably.” Id. at 802. While Hutson and Ray had different jobs, the differences between their positions do not necessarily mean that hiring one over the other automatically indicates the absence of discrimination. The employees in Pierce were different in a much more material way. Pierce involved a male employee’s reverse sex discrimination claim based on a demotion he received for violating the company’s sexual harassment policy, while a female employee who also violated the policy was not disciplined. The crucial difference between the two, however, was that Pierce was a supervisor, and his actions could have made the company itself liable. The differences between a circuit court and a probate court employee are not so material.
Under the district court’s overly broad reading of Pierce, Ray could never have set forth a claim for racial discrimination. She was the only probate employee who applied for the position. By the district court’s reasoning, no candidate hired by Defendant could be similarly situated to Ray. Therefore, absent direct evidence of racial discrimination, Defendant’s decision not to promote Ray would be entirely shielded from scrutiny under Title VII no matter what the actual motivation of those in charge of hiring.
Even read more narrowly, the district court’s analysis remains equally flawed. The district court found that Ray’s superi- or educational record and additional experience in a variety of court-related jobs “cannot create a substantial issue of material fact as to this prong because those qualifications are not equivalent to Court Clerk experience.” The district court determined that nothing in Ray’s resume could match court clerk experience. The district court’s analysis means Defendant could have appointed a poor performing, highly unqualified court clerk and still prevailed at the summary judgment stage because Ray did not have “equivalent” court clerk experience. For instance, the district court’s opinion would have been identical had Defendant promoted Markian Karpinsky, a male court clerk who applied for the position. According to Defendant, Karpinsky was not interviewed because Clark “considered his job performance to be mediocre, he made errors, and made inappropriate use of county property.” (Def. Br. at 14.) Despite this dismal evaluation, the district court’s holding would apply with equal force had it hired Karpinsky instead of Hutson. It is incredible to imagine that a plaintiff could not make out a Title VII case when she was qualified for the position, and a defendant promoted instead a clearly unqualified employee.
Defendant also relies on the more applicable White v. Columbus Metro. Hous. Auth., 429 F.3d 232 (6th Cir.2005). In that case, a female employee did not receive a promotion. A male employee was promoted instead, and the court found that some *884 comparison between the two employees was necessary at the prima facie stage of the case.
Engaging in such a comparison does not impermissibly conflate the two stages of the McDonnell Douglas test, for just as the court must independently review the plaintiffs qualifications in determining whether the plaintiff has met the second prong of her prima facie burden, so too does the court conduct an independent review of the relative qualifications of the plaintiff and the person selected for the position based on the evidence presented in order to determine whether the plaintiff has satisfied the fourth prong of her prima facie burden.
Id. at 243. In that case, the court analyzed the two applicant’s experience and found that the plaintiff was not as qualified as the person promoted for the position.
The problem with Defendant’s argument on this point is that Ray is only less qualified than Hutson if you accept Defendant’s testimony about what it valued in a Court Clerk Coordinator. The need to rely on Defendant’s purported preferences for the position make this case readily distinguishable from While. The district judge noted that “Clark identified prior Court Clerk experience as being one of her top criteria for a successful candidate.” The relative weight assigned by Clark to a candidate’s qualifications and attributes are irrelevant in determining whether Ray made out a prima facie case. “[A] court misapplies the structure of McDonnell Douglas by holding that [plaintiff] fails at the prima facie stage due to defendant’s nondiscriminatory reason.” Cline, 206 F.3d at 661. Clark’s stated preferences for what she most valued in an applicant should be considered in the second and third steps of the McDonnell Douglas framework.
Defendant makes no argument for Hut-son’s supposedly superior qualifications without specifically referencing the stated preferences of Clark or other decision-makers. On the terms of the job posting itself, the only deficiency of either employee was actually Hutson’s lack of a formal degree. Absent countervailing evidence from Defendant, Ray was actually passed over for a position for which she had the qualifications in favor of someone who facially did not meet those qualifications. It would pervert the McDonnell Douglas framework to find that such a situation cannot constitute discrimination merely because the two applicants worked in different court departments. Even accepting Hutson as qualified, it is unclear who would be the better employee, the one with superior education and long-term court experience or the one with slightly more direct experience. Similarly situated supervisors could reasonably prefer either applicant. Clark later claimed that she preferred what she thought to be the more relevant experience, but to consider Clark’s testimony runs afoul of the admonition in Cline that a court should not consider the non-discriminatory reason offered by a defendant at the prima facie stage. For these reasons, it is apparent that Ray easily presents a prima facie case.[1]
B. Defendant’s Non-Discriminatory Reason May Have Been Pretextual
Ray concedes that Defendant has offered a nondiscriminatory reason for hir *885 ing Hutson. The burden then shifts to Plaintiff to “produce sufficient evidence from which the jury may reasonably reject the employer’s explanation.” Warfield v. Lebanon Corr. Inst., 181 F.3d 723, 730 (6th Cir.1999) (quoting Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1083 (6th Cir.1994)). “Pretext may be established ‘either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer’s proffered explanation is unworthy of credence.’ ” White v. Baxter Healthcare Corp., 533 F.3d 381, 392 (6th Cir.2008) (quoting Burdine, 450 U.S. at 256, 101 S.Ct. 1089.) “A plaintiff will usually demonstrate pretext by showing that the employer’s stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer’s action.” Id. at 393. In addition, “shifting justifications over time calls the credibility of those justifications into question.” Cicero v. Borg-Warner Auto., Inc., 280 F.3d 579, 592 (6th Cir.2002).
Viewed in the light most favorable to Plaintiff, the oddities of the application process and Defendant’s assertions about the importance of “docket management experience” would allow a reasonable jury to find that Defendant’s nondiseriminatory reasons were pretextual.[2] As stated above, the application process did not proceed in an orderly or credible manner. At first, the position was listed as a merit position. Hutson was not a merit system employee. Nonetheless, she not only applied for the job but was interviewed and chosen as the top applicant. Having chosen Hutson, Defendant apparently realized that the job needed to be posted as “open competitive examination” in order for Hut-son to be eligible. When the position was reposted, more than 150 applicants applied. Thirteen were forwarded to Clark as the most qualified applicants, but rather than interview any of them, she simply recommended Hutson. This series of events is irregular, to say the least. One is left to wonder why Hutson applied in the first place if she was not eligible for the position. After the job was reposted, 154 applicants applied, and it appears that at least thirty-three were current Oakland County employees. These people apparently realized they were ineligible for the first application. (R-14, Defendant’s Motion for Summary Judgment, Exhibit 6).
Furthermore, only six of the 15 original applicants reapplied, indicated the majority of those applicants may have become discouraged by the arbitrariness and irregularity of the application process. The record is not clear which of the original applicants were merit system employees and which were not. In any case, when the first posting proved ineffective, Defendant effectively undertook a sham proceeding that induced over 150 applicants, when it probably had already determined that Hutson would receive the job. This whole process may have been a contrivance to give the job to Hutson, not in and of itself a violation of Title VII unless motivated by invidious discrimination, but the irregularity suggests improper subjectivity, and “subjective reasons provide ‘ready mechanisms for discrimination.’ ” Hedrick v. Western Reserve Care System, 355 F.3d 444, 461 (6th Cir.2004) (quoting Grano v. Dep’t of Dev. of City of Columbus, 699 F.2d 836, 837 (6th Cir.1983)). Whether *886 the subjectivity was based on race is an issue of fact best left to the fact-finder.
Equally problematic is Defendant’s amorphous reliance on “docket-management” experience. In its answer to Ray’s complaint, Defendant stated that: “the most important selection criteria for the [Court Clerk Coordinator] position was docket management experience, which Plaintiff did not have.” (Answer ¶ 7.) This answer is extremely problematic and lacking in credibility where Defendant was so set on hiring Hutson that it underwent a sham second application process. Hutson, one would think, would therefore have exemplary docket management experience. Another applicant, Jean Harroun, testified that at the time of Hutson’s promotion, the Circuit Court Record Specialists, and not the court clerks, were responsible for maintaining the judges’ dockets.
The majority attempts to dismiss this testimony by stating that: “Although it appears that the job duties of court clerks had recently changed to involve additional docket management, it is beyond dispute that court clerks’ jobs had always involved management of courtroom activities and case schedules.” Majority Op. at 881. Contrary to the majority’s unwarranted conclusion, Harroun testified that court clerks were familiar with the docket but that the case management employees “managed [the docket] and told [court clerks] what needed to be set, what needed to be done.” This level of “docket management experience” is very similar to Plaintiffs. Ray testified that in her position she could schedule and adjourn cases and that she put the information into the computer to create the docket. Despite this similarity to Hutson’s experience, Clark allegedly rejected Ray in part because Clark did not “see any courtroom experience or docket management experience, and that’s really what I was focusing on.” A reasonable jury could find that Ray’s docket management experience was at least similar to Hutson’s. Considering this was Defendant’s “most important selection criteria,” it is troubling in the extreme that the rejected African-American employee’s docket management experience was not that dissimilar from that of the white employee who was hired.
At best, it appears that Clark wished to hire Hutson, a white woman, as Court Clerk Coordinator. The resulting job search involved several irregularities, and Defendant’s desire to hire Hutson has made it necessary for Defendant to struggle to clearly articulate its supposedly objective criteria. The obvious focus on Hutson may or may not involve racial discrimination, but the oddities surrounding the hiring, the inability to rely on objective criteria, and the failure to even grant an interview to a qualified African-American employee could allow a jury to find that the decision was racially motivated. For these reasons, I respectfully dissent.

. While the majority does not reach the issue of prima facie case, it is troubling that the district court's flawed analysis is uncritically presented by the majority without comment. If the majority wanted to base its decision solely on pretext, it would have been better served to omit its recitation of the parties' positions and the district court's unsound analysis.

. Plaintiff also argues that the lack of education of both Hutson and another applicant who was interviewed is evidence of racial discrimination. Defendant has attempted to explain two policies, counting hours towards a bachelor's degree as equivalent to an associate's and "underfilling," in order to justify these deviations.