NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0258n.06

Case No. 16-6616

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED
May 04, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ANGELA ZAFFINO, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| METROPOLITAN GOVERNMENT OF | ) | DISTRICT OF TENNESSEE |
| NASHVILLE AND DAVIDSON COUNTY, | ) | |
| TENNESSEE, | ) | |
| | ) | |
| Defendant-Appellee. | ) | **O P I N I O N** |

BEFORE: BOGGS, McKEAGUE, GRIFFIN, Circuit Judges.

**McKEAGUE, Circuit Judge.** Angela Zaffino asserts that she is disabled and that the Metropolitan Government of Nashville and Davidson County (Metro) violated the Americans with Disabilities Act (ADA) by failing to accommodate her disability and not engaging in good faith in a required interactive process. The district court granted summary judgment for Metro. We affirm.

**I**

In 2005, Zaffino suffered a stroke and was diagnosed with fibromuscular dysplasia, a condition that puts her at risk for an additional stroke. As a result, Zaffino monitors her blood pressure and attempts to reduce stress and anxiety. She maintains that her condition is a disability under the ADA.

From 2006 to 2013, Zaffino was a guidance counselor at Dupont-Tyler Middle School in Nashville, Tennessee. In the summer of 2013, the school district notified Zaffino that she was to be transferred to Madison Middle School for the 2013–14 school year. In response, Zaffino sent a letter giving notice of her claimed disability—fibromuscular dysplasia plus related complications—and specifically requesting seven accommodations under the ADA.

Only one of Zaffino's requested accommodations—that she remain at Dupont-Tyler—is at issue here. Zaffino asked for that accommodation as follows:

> [T]hat I be allowed to remain the professional counselor at Dupont Tyler Middle which is within a 2 mile radius of Summit Hospital. Being moved from Dupont Tyler will cause me much undue stress and could possibly trigger the serious health issues that could lead to another stroke.

R. 57-4, Zaffino Letter, PID 271. Her physician said the same in an initial letter to the district: "[d]ue to her serious medical condition, it is in the best interest of Ms. Zaffino to be allowed to stay at Dupont-Tyler Middle School where she will be within a 2 mile radius of Summit Medical Center, which is a certified stroke center." R. 63, Lim Letter, Sealed Doc., PID 522.

In response, a representative of the district met with Zaffino and corresponded with her physicians about the requested accommodations. During this process, the school district learned that Madison, where Zaffino was to be transferred, was approximately the same distance from Summit as was her home. Partially based on this similarity in distance, the district denied Zaffino's request to stay at Dupont-Tyler and directed her to report to Madison.

Zaffino appealed the decision. More doctors' letters followed, repeating the advice that Zaffino should remain at Dupont-Tyler. At some point during the appeal, the school district offered to transfer Zaffino to Dodson Elementary School for the 2013–14 school year. Although Dodson is closer to Summit Medical Center than is Dupont-Tyler, Zaffino turned down the offer because it was not guaranteed that she would remain there in subsequent school years.

Later, one doctor approved the transfer to Madison because he learned that the school was about three miles from another Nashville-area certified stroke center. R. 63, Wagner Letter, Sealed Doc., PID 538 ("Madison Middle School is as reasonable a workplace for [Zaffino] as Dupont Middle School in terms of proximity to a stroke center"). As a result, the school district stuck to its decision to transfer Zaffino to Madison. She sued under the ADA, alleging Metro failed to accommodate her disability and did not engage in the ADA interactive process—in which possible accommodations are considered—in good faith.

## II

The district court granted summary judgment for Metro on the basis that Zaffino rejected a reasonable alternative accommodation—the proposed transfer to Dodson. R. 76, Dist. Ct. Op., PID 1584. We review the district court's grant of summary judgment de novo. *Siggers v. Campbell*, 652 F.3d 681, 691 (6th Cir. 2011). We "may affirm a decision of the district court for any reason supported by the record, including on grounds different from those on which the district court relied." *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 786 (6th Cir. 2016) (citation omitted).

The ADA prohibits discriminating against a qualified individual with a disability. 42 U.S.C. § 12112(a). This prohibits employers from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Id.* § 12112(b)(5)(A). A reasonable accommodation is defined, in part, as "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(*o*)(ii). Plaintiffs suing for a violation of this prohibition bear "the initial burden of

proposing an accommodation and showing that that accommodation is objectively reasonable." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007) (quoting *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004)).

Zaffino fails this initial burden. The accommodation she proposed was to remain at Dupont-Tyler so she could be close to her doctors and avoid the stress of transferring. But she provides no authority to show that—under the ADA—barriers outside of the workplace or the stress of change require employers to keep employees at a specific work location. And we find nothing that would lead us to this conclusion.

On the contrary, this court has found accommodations unreasonable when requested to address barriers outside of the workplace. *See Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 480 (6th Cir. 2012). In *Regan*, the plaintiff—who suffered from narcolepsy—had worked for years on a shift that ran from 6 a.m. to 3 p.m. *Id.* When she was told her shift would change to one spanning 7 a.m. to 4 p.m., Regan said the change would lengthen her commute and aggravate her condition by increasing fatigue. *Id.* Her doctor agreed, writing that a short commute was in Regan's medical interest and urging for her shift to remain from 6 a.m. to 3 p.m. *Id.* at 479. When the employer refused, Regan sued under the ADA. On appeal from summary judgment, the court held that the ADA "does not require [the employer] to accommodate Regan's request for a commute during more convenient hours" and agreed that, "[w]hile an employer is required to provide reasonable accommodations that eliminate barriers in the work environment, an employer is not required to eliminate those barriers which exist outside the work environment." *Id.* at 480 (second passage quoting *Salmon v. Dade Cnty. Sch. Bd.*, 4 F. Supp. 2d 1157, 1163(S.D. Fla. 1998)).

The *Regan* case is a lot like this one. Here, Zaffino argues that her request to remain at Dupont-Tyler was reasonable because she and her doctors had concerns about how long it might take for her to get to certain medical providers and about the stress of a transfer. These barriers—travel time to nearby doctors and general, transfer-related stress—resemble Regan's and her doctors' concerns about the possibility of a longer commute and how it might aggravate her disability. The *Regan* court found the employer was not required to accommodate Regan's requests. We find the same here.

Zaffino's concerns about the distance from her doctors are unrelated to the essential functions of her job, but instead address problems she faces outside of the workplace.[1] As *Regan* shows, such concerns are beyond her employer's duties to accommodate under the ADA. And we find Zaffino's demand unreasonable to the extent it seeks to invoke federal law to insulate her from the stress incumbent to change.[2] Thus, Zaffino has failed to show that the accommodation she requested was objectively reasonable.

We emphasize that the ADA does not require an employer to make accommodations just because they might be in an individual's interest—it requires employers to make reasonable accommodations that enable a disabled employee to perform the essential functions of a job she's otherwise qualified for. *See* 29 C.F.R. § 1630.2(*o*). And while we strongly encourage employers to work with employees (especially those with disabilities) to ensure a comfortable and mutually agreeable work arrangement, we recognize that the ADA's requirement to accommodate extends only as far as reasonably necessary to allow qualified, disabled individuals

---

[1] In fact, Zaffino maintains that neither her claimed disability nor its symptoms limit her ability to perform her duties as a guidance counselor. R. 67-1, Zaffino Depo., PID 1173–76, 1191; R. 57-4, Zaffino Letter, PID 271.

[2] Finding otherwise could effectively read the ADA to require an employer to keep an employee with fibromuscular dysplasia (or another stress-related disability) at a particular job site as long as it was possible that change might cause stress, which we decline to do.

to perform the essential functions of a job.[3] Metro had no duty to accommodate Zaffino's commute time to her doctors or to protect her from the stress of change. Accordingly, her ADA failure-to-accommodate claim fails.

Finally, Zaffino alleges Metro failed to engage in good faith in the informal, interactive process required under the ADA to identify a reasonable accommodation for a qualified individual. *See* 29 C.F.R. § 1630.2(*o*)(3). We agree with the district court that "the evidence overwhelmingly establishes that MNPS engaged in good faith in the interactive process" and we adopt its reasoning on the issue in full. *See* R. 76, Dist. Ct. Op., PID 1588–90.

### III

Thus, for the foregoing reasons we **AFFIRM** the district court's grant of summary judgment for the defendant.

---

[3] Put differently, under the ADA, you can't always get what you want; but sometimes, it might apply, and you'll get what you need. *Cf. Hedrick*, 355 F.3d at 459.