NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0620n.06

No. 14-2344

**FILED**
Sep 02, 2015
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CELIA SZASZ,

      Plaintiff-Appellant,

v.

DOLGENCORP, LLC,

      Defendant-Appellee.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:    KEITH and CLAY, Circuit Judges; MARBLEY, District Judge.[*]

**CLAY, Circuit Judge.** Plaintiff Celia Szasz ("Plaintiff") appeals the district court's order granting summary judgment in favor of Defendant Dolgencorp, LLC ("Defendant"), in this action brought under the Michigan Persons with Disabilities Civil Rights Act ("DCRA"), Mich. Comp. Laws §§ 37.1102, 37.1202(1)(b), (g). Plaintiff asserts that her employment was unlawfully terminated when Defendant failed to offer an accommodation for her disability. The district court found otherwise. For the reasons stated herein, we **AFFIRM** the judgment of the district court in full.

## BACKGROUND

### Procedural History

Plaintiff initiated this lawsuit against Defendant on December 21, 2012, in the Eastern District of Michigan, pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332. The

---

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

complaint alleged that Defendant discriminated against Plaintiff in violation of the DCRA by choosing to terminate her employment rather than make a reasonable accommodation for the disability she alleged, following a motor vehicle accident. The complaint sought upwards of $75,000 in damages, based on her economic (*i.e.*, lost wages) and non-economic harms, including emotional distress, pain and suffering, and reputational harm. Plaintiff also sought injunctive relief in the form of an order of reinstatement so that she could return to her former position.

Defendant answered by denying all liability and asserting a variety of affirmative defenses. Following discovery, Defendant moved for summary judgment. Subsequent to briefing and a hearing, the district court issued its opinion and order, granting summary judgment in favor of Defendant. This timely appeal followed.

## Factual Background

### A. Plaintiff's Position at Dollar General

Plaintiff began working for Defendant as a part-time store clerk in 2007 at the Dollar General store located in Washington, Michigan.[1] She subsequently transitioned to full-time employment and was promoted to lead sales associate. In September of 2010, she was again promoted, and became the assistant store manager. Plaintiff, for all intents and purposes, maintained ultimate responsibility on the ground for operating the store. Toward the end of her employment, Plaintiff was the only employee in a management position at the Washington, Michigan location.

The store was "thinly staffed," with a regular shift involving only two employees—a clerk and a manager. Plaintiff described the manager position as requiring her to do whatever

---

[1] Dollar General is a national retailer that offers discount merchandise.

tasks had to be done to effectively operate the store at any particular moment. A typical day for Plaintiff involved going to the bank in the morning, handling paperwork (*e.g.*, merchandise orders), opening the store, rearranging merchandise, insuring that the correct promotional posters were in place, running the cash register, and helping customers. There were also days that required more physical activity. For example, on "truck day," which occurred once a week, new merchandise would arrive and Plaintiff would help restock the shelves, after supervising the unloading of the truck. Among the heavier items in the store that needed to be restocked were large packages of dog food and cases of laundry detergent. Plaintiff explained in her deposition testimony that although she could direct a store clerk to do all of the stocking while she worked the register, restocking (like all other tasks) was mostly a team effort, and responsibilities rotated.

On weekdays, Plaintiff often opened the store by herself, and the part-time clerk would not arrive until later in the day. But prior to Plaintiff being the only manager at her store, on occasion, for brief periods there would be three employees in the store at the same time when the manager and assistant manager met to share information about the store's operation. Apart from this overlap, there were never more than two employees in the store. Plaintiff, in addition to her administrative duties, was responsible for the same tasks as any of the part-time store clerks. She swept and mopped the floors, and she cleaned the bathroom. She also helped deconstruct and rearrange shelving when the store's layout invariably changed each summer. This task required removing all merchandise from the shelves. In Plaintiff's own words, she did "[w]hatever needed to be done," because the store did not have task-specific positions such as a cashier.

Plaintiff remained in this hands-on management role until December 13, 2011, when she was effectively terminated, inasmuch as she was not permitted to return to work following the

exhaustion of the medical leave she had taken to recover from injuries sustained in an auto accident.

### B.     The Accident and Disability Leave

The accident occurred on the evening of July 28, 2011. Plaintiff was driving through an intersection when her car was broadsided by a vehicle that had run a red light. She was taken to the hospital and remained there until early in the morning the following day. She suffered pain and swelling in her extremities as a result of the accident, and she became prone to experiencing headaches, blurred vision, and dizziness. Despite these symptoms and her trip to the emergency room, Defendant allegedly demanded that Plaintiff open the store the same morning she was released from the hospital. She complied, but Defendant eventually sent another manager from a different store to relieve Plaintiff from the remainder of her shift. Plaintiff returned to work the next couple of days, until she was able to go on disability leave pursuant to the Family and Medical Leave Act ("FMLA"), after she submitted to Defendant a letter from her doctor.

Plaintiff remained on FMLA leave through October 2011 while she continued to recover from her injuries and attend physical therapy. In early November 2011, when Plaintiff's FMLA leave was exhausted, she submitted another note from her doctor that stipulated her readiness for work, contingent on certain restrictions. Plaintiff was not permitted to work for more than four hours a day or to lift more than ten pounds.

Defendant outsourced the administration of its leave programs to a third-party provider named Matrix. After receiving Plaintiff's note, Matrix contacted Defendant's leave administrator, Rebecca Cherry. Ultimately, Cherry was responsible for determining whether an accommodation could be made for an employee claiming a disability. To make this determination, she would compare the affected individual's written job description with the limitations the individual was requesting that Defendant accommodate.

The job description for assistant store manager is broken down into six sections, each of which contains a number of bullet points. The sections are titled as follows: "General Summary," "Duties and Essential Job Functions," "Knowledge and Skills," "Work Experience and/or Education," "Competencies," and "Working Conditions and Physical Requirements." (R. 20-2, Job Description). Key to this dispute is the following bullet point, listed under the heading "Physical Requirements": "[f]requent and proper lifting of up to 40 pounds; occasional lifting of up to 55 pounds." (*Id.*). Based on this requirement, Cherry informed Matrix that "[t]he 10 lb lifting restriction prohibits [Plaintiff] from performing the essential functions of her job." (R. 28-9, Matrix Log). Matrix in turn informed Plaintiff that Defendant was unable to accommodate her, but that she could take advantage of Defendant's Medical Leave of Absence program, which would afford her an additional six weeks of leave. She was also informed that if her medical restrictions did not change prior to the exhaustion of this additional leave, she would need to contact Defendant directly to seek further accommodations. Defendant's Medical Leave program explicitly stated that "[e]mployment may be terminated at the end of leave if the employee does not return to work, unless otherwise required by law." (R. 27-3, Medical Leave Policy, PageID # 330).

## C.    Termination and Lawsuit

The six-week period of Plaintiff's additional leave passed without much change to her condition. She submitted a new authorization from her doctor indicating that she could possibly work eight hours a day, but that the ten-pound lifting restriction was still in place. Matrix indicated that Plaintiff needed to call Cherry because she had exhausted her leave and the same restriction which could not previously be accommodated was still in place. There is no record of Plaintiff contacting Cherry or any of Defendant's agents after her leave expired, and Plaintiff testified that she does not recall whether she engaged in any conversations with Defendant after

Defendant initially told her that the ten-pound lifting restriction could not be accommodated. Plaintiff was also unaware of the date that her employment was officially terminated. She simply found a different job and moved on, until seven months later when, on October 15, 2012, she sent a letter to Defendant stating her intention to bring a claim under the Americans with Disabilities Act ("ADA").[2]

When no resolution was reached, Plaintiff filed her lawsuit. In addition to the facts discussed above, Defendant submitted a declaration in support of its motion for summary judgment, which Plaintiff had signed upon the commencement of her employment. This declaration stipulated that Plaintiff was capable of performing the "essential job function" of "[f]requent and proper lifting of up to 40 pounds[, and] occasional lifting of up to 55 pounds," "with or without a reasonable accommodation." (R. 24-3, Phys. Reqs., PageID # 178). Defendant also submitted the sworn declaration of a Dollar General district manager, confirming that the responsibilities of the assistant store manager position were, in practice, the same as described in the written job description. The manager stated:

> Assistant Store Managers assigned to each store work a full-time schedule. Assistant Store Managers must also be able to lift more that ten pounds as part of their job. Examples of the types of merchandise that has to be lifted that weighs more than ten pounds includes dog food, boxes of laundry detergent, cases of motor oil, cases of water, cases of bleach, and cases of sugar. The lifting of these products can take place as part of the stocking process, checking customers out at the register or simply lifting the product to assist a customer.

(R. 27-8, Unger Decl., PageID # 446).

During the litigation, the district court granted Plaintiff's discovery request, which required Defendant to survey all of its Michigan stores—over 300 of them—to discover (1) what, if any, accommodations had been offered to assistant store managers in the past three

---

[2] She never asserted this claim. Her complaint only refers to and alleges violations of the DCRA.

years, and (2) whether or not any assistant store managers in the State worked less than full time. There was no record of any accommodations and all assistant store managers worked full-time schedules. The district court thereafter granted Defendant's motion for summary judgment, finding that the DCRA does not require employers to recreate jobs, transfer employees to new jobs, or to engage in a back and forth negotiation in attempt to find a reasonable accommodation. This timely appeal followed.

## DISCUSSION

### Standard of Review

A district court's resolution of a motion for summary judgment is reviewed *de novo*. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004). We may only grant summary judgment when "viewed in the light . . . most favorable to the nonmovant, there is either complete absence of proof on the issues or no controverted issues of fact upon which reasonable persons could differ." *Spengler v. Worthington Cylinders*, 615 F.3d 481, 488–89 (6th Cir. 2010) (internal quotation marks omitted). We may consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" when ruling on a summary judgment motion. Fed. R. Civ. P. 56. All reasonable inferences shall be afforded to facts in favor of the nonmoving party. *Combs*, 354 F.3d at 576–77.

### Analysis

The DCRA prohibits Michigan employers from "[d]ischarg[ing] or otherwise discriminat[ing] against an individual with respect to compensation or the terms, conditions or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position." Mich. Comp. Laws § 37.1202(1)(b). It also prohibits employers from "[d]ischarg[ing] or tak[ing] other discriminatory action against an individual when adaptive devices or aids may be utilized thereby enabling that

individual to perform the specific requirements of the job." § 37.1202(1)(g). Furthermore, employers must accommodate a disabled employee unless making the requested accommodation "would impose an undue hardship." § 37.1102(2).

An employer is liable under the DCRA only if the plaintiff can prove (1) that he or she qualifies as being disabled, (2) that the disability is unrelated to the performance of core job duties, and (3) that the he or she was discriminated against based on the disability. *Chmielewski v. Xermac, Inc.*, 580 N.W.2d 817, 821 (Mich. 1998). Only the second element is at issue.

Plaintiff contends that despite the written job description and the sworn declaration of her employer, lifting more than ten pounds and working more than four hours per shift were not essential job functions. Under the DCRA, however, the employer's judgment with respect to what constitutes an "essential function" of an employee's job is entitled to "substantial deference." *Peden v. City of Detroit*, 680 N.W.2d 857, 871 (Mich. 2004). This deference requires courts to presume that the employer's judgment is reasonable and, unless rebutted by the plaintiff, means that the plaintiff's claim cannot succeed unless the plaintiff proves that "he can, with or without accommodation, perform those duties." *Id.* at 871–72.

Plaintiff simply cannot overcome this presumption on the record before this court because she has not proffered sufficient evidence that lifting ten pounds was not an essential job function or that Defendant could have reasonably accommodated her restrictions without hardship. Her own testimony demonstrated that working at the Dollar General store was an all-hands-on-deck effort: she often restocked shelves and regularly lifted items that weighted greater than ten pounds. She also admitted that as an assistant store manager she was a full-time employee and held substantial responsibility with respect to supervision of the store, including the responsibility to open and close the store on a set number of days each week. Given that

Defendant's business model relies on their stores being "thinly staffed," Plaintiff admitted that there were often times where she worked alone. In those circumstances, Plaintiff's lifting restriction would necessarily limit her ability to assist all customers, who might request assistance with items weighing more than ten pounds. Plaintiff admitted that various items in the store weighed over ten pounds. Therefore, Defendant's contention that lifting more than ten pounds was an essential job function is not unreasonable.

Plaintiff presses this Court to refer to the factors associated with the ADA for determining whether a job function is essential, and she cites to a few cases that analyze this inquiry under the ADA framework. These cases are inapposite. The Michigan Supreme Court in *Penden v. City of Detroit* considered claims brought both under the ADA and the DCRA, yet the court eschewed any reliance on the ADA factors when it dispensed with the claim brought under Michigan's disability law. *See* 680 N.W.2d at 869 (cautioning courts "against simply assuming that the [DCRA] analysis will invariably parallel that of the ADA" and noting that "[u]nlike the ADA, the [DCRA] does not provide specific guidance regarding what the *duties of a particular job* are[;] . . . the task falls upon the judiciary to determine how to resolve relevant disputes").

Even if it were appropriate for us to seek guidance from the federal regulations, with respect to defining essential job functions, the ADA factors do not weigh in Plaintiff's favor. Under those factors, a particular job function may be deemed essential "because of the limited number of employees available among whom the performance of that job function can be distributed." 29 C.F.R. § 1630.2(n). Other factors to consider include: "[t]he employer's judgment as to which functions are essential," "[w]ritten job descriptions," "the amount of time spent on the job performing the function," "the consequences of not requiring the incumbent to

perform the function," and the actual experience of past incumbents, or the present "experience of incumbents in similar jobs." *Id*. Most of these factors weigh strongly in favor of finding that the lifting requirement was an essential function of Plaintiff's job. Defendant's district manager asserted that routinely lifting merchandise weighing more than ten pounds is an essential function, the written job description noted as a requirement the ability to frequently lift forty pounds, and Plaintiff testified that she would help regularly with stocking and rearranging merchandise that may weigh over ten pounds.

Under Michigan law, "[a]n employer . . . has no duty to accommodate the plaintiff by recreating the position, adjusting or modifying job duties otherwise required by the job description, or placing the plaintiff in another position." *Kerns v. Dura Mech. Components, Inc.*, 618 N.W.2d 56, 64 (Mich. Ct. App. 2000). Job restructuring, which is what Plaintiff explicitly requests in her briefing, *see Appellant Br.* at 13, applies only to "minor or infrequent duties relating to the particular job held by the person with a disability." Mich. Comp. Laws § 37.1210(15). Defendant does not offer cashier positions and, as discussed above, the ability to help move merchandise around the store is an essential function for each employee working in a Dollar General store. Defendant's business model envisions that the few employees working at any given time within a store are interchangeable with respect to stocking shelves, assisting customers, running the cash register, and rearranging merchandise. Therefore, an accommodation allowing plaintiff to forego all heavy lifting constitutes an undue hardship on the company. *See Plumb v. Abbott Labs.*, 60 F. Supp. 2d 642, 654 (E.D. Mich. 1999) (finding that allowing an employee to outsource her delivery responsibilities to accommodate a ten-pound lifting restriction would create an undue hardship on the company because personal delivery was intended to improve customer relations).

Plaintiff's request that she be permitted to work in four-hour shifts is likewise unreasonable. She herself testified that the assistant store manager position likely was a full-time job due to the responsibilities it entailed. The fact that Plaintiff remained able to perform a number of her other essential job functions is irrelevant in this instance, because she did not satisfy her "initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004) (internal quotation marks omitted).

## CONCLUSION

For the reasons stated in this opinion, we **AFFIRM** the district court judgment granting summary judgment in favor of the Defendant in this action brought under the DCRA.