NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0553n.06

No. 18-5485

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| | ) | |
| | ) | **FILED** |
| | ) | Oct 31, 2019 |
| JAMES RANDY WILLIAMS, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| GRAPHIC PACKAGING INTERNATIONAL, | ) | |
| INC., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: GIBBONS, ROGERS, and STRANCH, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. James "Randy" Williams worked as a
department manager for Graphic Packing International, Inc., from 2011 to 2015. In 2015, his
employment was terminated after an internal investigation revealed that Williams had been using
manipulative and coercive tactics to control his employees and prevent them from communicating
with upper management. His termination took place shortly after his return from medical leave
for treatment of prostate cancer. He sued under the Americans with Disabilities Act, Tennessee
Disability Act, Genetic Information Non-Discrimination Act, Age Discrimination in Employment
Act, Tennessee Human Rights Act, Family Medical Leave Act, and the Employee Retirement
Income Security Act, alleging that he was fired because of his illness and age. Graphic Packaging
asserts that Williams was terminated because his treatment of his employees violated the

company's Core Values. The district court granted summary judgment to Graphic Packaging on all claims. Williams now appeals.

Because Williams has failed to demonstrate that Graphic Packaging's proffered reason for his termination is mere pretext, we affirm the district court's grant of summary judgment on his discrimination claims. Williams has likewise failed to demonstrate that Graphic Packaging required him to divulge genetic information, retaliated against him for utilizing his company-provided medical leave, or failed to provide a reasonable accommodation.

I.

James "Randy" Williams ("Williams") worked for Graphic Packaging International, Inc., ("Graphic Packaging") as a department manager from September 2011 until December 2015. He was hired at the age of fifty-five. He consistently received positive performance evaluations for meeting and exceeding production goals, including that "[d]irect reports respect[ed] and trust[ed] him" and that he "demonstrate[d] superior communication skills and work[ed] to truly understand someone's opinions and needs."

Williams was "second in command" over operations at the facility and supervised four managers: Tasha Pack ("Pack"), Sandy Williams ("Sandy"), Jackie Miles ("Miles"), and Tony Sewell ("Sewell"). In numerous performance evaluations, Williams was told that he needed to improve his relationship with these managers. Performance evaluations indicated that "[a]ssociates [felt] like [he] stare[d] them down at times or [felt] like what they ha[d] to say [wa]s not important. Learning to approach associates in an open manner w[ould] greatly help improve the impression that some g[o]t from [him]." Another evaluation warned that "[p]eople need[ed] to see that [he could] communicate in an open, nonthreatening manner. . . . [D]irect reports sa[id] there [wa]s no need in disagreeing with [him] because [he was] 'always' right." DE 24-4,

Performance Evaluation, Page ID # 197. Williams was told to communicate "without withholding any information," and that his employees reportedly felt "that they c[ould]n't express their ideas to [him] without being shot down because [he was] always right." DE 24-5, Performance Evaluation, Page ID # 213.

In late 2014 or early 2015, Williams informed his supervisor and Plant Manager, Eddie Lee ("Lee"), that he had been diagnosed with prostate cancer for the second time. In September 2015, Williams requested time off for treatment, and then told his four subordinates, Pack, Sandy, Miles, and Sewell, about his illness and anticipated leave. Williams was on leave from September 14, 2015, until November 23, 2015, with Pack assuming his duties as department manager.

While Williams was on medical leave, Graphic Packaging's leadership became aware of numerous accusations against him concerning inappropriate treatment of employees. During Pack's tenure as interim department manager, Lee noted that Pack was not communicating with him regularly. At a meeting with Lee in mid-November, Pack revealed that she was afraid to communicate with Lee because Williams had told her that Lee thought that she was a weak supervisor and had consequently rejected her requests for training opportunities and a company credit card. According to Pack, Williams had also told her that Lee "thought [she] was weak, he didn't think women could be in supervisor/management roles, [or] taken seriously." DE 24-10, Pack Dep., Page ID # 334.

Pack also made allegations about Williams's treatment of her and the other management. Williams allegedly frequently humiliated his subordinates by berating them in front of other employees. Pack reported that Williams said that he "owned" her and that she, along with the other supervisors, had "targets on their backs" and could not trust management. DE 24-7, Investigation Report, Page ID # 256, 262; DE 24-2, Lee Dep., Page ID # 163–64; DE 24-10, Pack

Dep., Page ID # 332, 348–49. As part of his comment that he "owned" Pack, he reportedly informed her that she was "on call" 24/7. DE 24-7, Investigation Report, Pack Email, Page ID # 262. Williams had also cheated on a mandatory safety training test.

Lee subsequently notified Graphic Packaging's HR manager, Steve Flatt, of the accusations. During subsequent interviews with Pack, she reiterated her claims against Williams. According to Pack, she had also made requests for further career development, such as training opportunities rejected by Williams, who told her that Lee would not approve them.

Williams was suspended, pending further investigation, on December 2, 2015. (Graphic Packaging cited Williams's alleged violations of the company's Core Values, which Williams signed as acknowledging he had read on September 27, 2011. Those Core Values are: (1) integrity; (2) respect; (3) accountability; (4) relationships; and (5) teamwork.

As part of his continuing investigation into the accusations against Williams, Flatt asked other supervisors who reported to Williams to provide an overview of their professional relationship with Williams. Those supervisors similarly reported that Williams had told them that they had "targets on their back" and that he "owned" them. DE 31, Plaintiff Responses to Material Facts, Page ID # 955-56; DE 24-7, Investigation Report, Sewell Email, Page ID # 267. One employee reported that Williams required him to stay over an hour after the end of his shift in order to "show that he could[.]" DE 24-7, Investigation Report, Miles Email, Page ID # 263. There were also numerous incidents in which Williams allegedly dissuaded his employees from speaking with plant management. In one instance in which a supervisor actually complained to HR about the working conditions, after HR approached him independently, Williams approached the supervisor "the next day . . . about [his] going to HR." DE 24-7, Investigative Report, Sewell Email, Page ID # 267. Within two weeks of that conversation, the supervisor was reassigned to

the night shift. One employee reported: "[F]or the last four years I have not looked forward to coming to work under these conditions. But I also have a family to support and tried to make the best of it." *Id.* at 263.

On December 7, 2015, Flatt conducted his first interview with Williams by phone. Williams admitted that he received "assistance" on his safety training test. He also admitted that he had spread a rumor to Pack that Lee had molested his daughter. Williams denied ever having threatened to fire his employees, yelled at them, or told them that he "owned" them. Flatt interviewed Williams again on December 8, 2015, and confronted him regarding text message evidence he had of Williams having told other employees about the rumor concerning Lee and his daughter. Williams said that he had forgotten about those text messages when he first spoke with Flatt.

Williams has conceded that his conduct violated Graphic Packaging's Core Values. He admitted in his deposition that he told his subordinates that he "owned" them; that he discussed an employee's pay information with another employee; that he told employees about an unsubstantiated rumor that Lee had molested his own daughter; that he cheated on a mandatory safety exam; and that he told his subordinates not to speak to plant management.

After Graphic Packaging terminated Williams's employment, citing his violations of the company's Core Values, Williams timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and filed a complaint on November 1, 2016, claiming that he was fired because of his illness and age. Williams claims that Graphic Packaging (1) violated the Americans with Disabilities Act ("ADA"), Tennessee Disability Act ("TDA"), Age Discrimination in Employment Act ("ADEA"), Tennessee Human Rights Act ("THRA"), and

Family and Medical Leave Act ("FMLA")[1] by discriminating against him because of his taking time off for cancer treatment; (2) violated the Employee Retirement Income Security Act ("ERISA") by discriminating against him for taking time off for cancer treatment; (3) violated the Genetic Information Nondiscrimination Act ("GINA") by inquiring as to Williams's familial history with cancer; and (4) failed to provide a reasonable accommodation upon Williams's return from leave. Graphic Packaging argued in response that Williams was terminated for violating the company's Core Values by using fear, intimidation, and manipulation to manage his subordinates. On May 8, 2018, the district court granted Graphic Packaging's motion for summary judgment and dismissed the lawsuit. Williams timely appealed.

## II.

## A.

This court reviews a district court's grant of summary judgment *de novo*. *Sommer v. Davis*, 317 F.3d 686, 690 (6th Cir. 2003). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *El Camino Res. Ltd. v. Huntington Nat'l Bank*, 712 F.3d 917, 922 (6th Cir. 2013) (citing Fed. R. Civ. P. 56(c)). This court considers the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," and draws all reasonable inferences in favor of the nonmoving party. *Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997).

---

[1] Williams erroneously claims that "the district court found [he] carried his burden with respect to FMLA retaliation, from which [Graphic Packaging] did not appeal." CA6 R. 19, Appellant Br., at 26. In fact, the court found that it did "not have sufficient basis to conclude that Defendant's termination decision . . . was pretextual for retaliating against Plaintiff for exercising his FMLA rights, especially after Plaintiff utilized FMLA rights for cancer treatment with Defendant's approval" and consequently "dismiss[ed] Plaintiff's FMLA retaliation claims and GRANT[ED] Defendant's motion for summary judgment." DE 44, Opinion, Page ID # 1085. On appeal, Graphic Packaging clearly argues that Williams has failed to demonstrate that his employment was terminated based on discrimination for his taking medical leave.

Where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,]" the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The evidence must be sufficient such that a jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

B.

Williams first argues that the district court incorrectly dismissed his claim that Graphic Packaging violated the ADA, TDA, ADEA, THRA, and FMLA by discriminating against him because of his taking time off for his cancer treatment.

All of Williams's claims under the ADA, TDA, ADEA, THRA, and FMLA rely on the same burden-shifting analysis. *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 724–25 (6th Cir. 2012) (applying the same burden-shifting analysis to claims brought under the THRA and ADEA); *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) ("There is no doubt that this Court applies the *McDonnell Douglas* burden-shifting framework to FMLA retaliation suits when the plaintiff produces indirect evidence of a causal connection between the protected activity and the adverse employment action.").

Both Title I of the ADA and the Tennessee Disability Act prohibit employers from discriminating against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a); *see* Tenn. Code Ann. § 8-50-103(b) ("There shall be no discrimination in the hiring, firing and other terms and conditions of employment . . . of any private employer, against any applicant for employment based solely upon any physical, mental or visual disability of the applicant . . ."). If a

plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse action. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891-92 (6th Cir. 2016) (citation omitted). If the defendant successfully articulates such a legitimate reason, then the burden once again shifts back to the plaintiff to demonstrate that the defendant's legitimate reason is nothing more than mere "pretext for unlawful discrimination." *Id.*

The parties do not dispute that Williams has made a *prima facie* claim of discrimination. In response, Graphic Packaging argues and presents evidence that it terminated Williams's employment because he violated the company's Core Values. "[V]iolations of company policies, poor managerial skills, or leadership failures are legitimate, non-discriminatory reasons for disciplining or discharging an employee." *Howley v. Fed. Express Corp.*, 682 F. App'x 439, 446 (6th Cir. 2017) (citing *Idemudia v. J.P. Morgan Chase*, 434 F. App'x 495, 502 (6th Cir. 2011)). Thus, Williams must demonstrate that Graphic Packaging's stated reason for his termination was pretextual, which requires "showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc) (citation omitted). Because Williams's evidence of pretext is insufficient to meet this burden, we affirm the district court's grant of summary judgment on his discrimination claims.

1.

Williams produces no evidence that Graphic Packaging's "proffered bases for [his] discharge never happened, *i.e.*, that they are factually false." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004). The evidence demonstrates that Graphic Packaging terminated Williams's employment after receiving complaints from an employee, which were later corroborated by interviews with fellow employees, an internal investigation, and depositions from

Graphic Packaging upper management, Human Resources employees, and employees who reported to Williams. The record reflects that Williams violated Graphic Packaging's Core Values by mistreating employees both publicly and privately, limiting access to upper management, and propagating troubling and salacious rumors concerning upper management. Williams has even admitted that he committed at least some of the acts which so clearly violated Graphic Packaging's Core Values.

2.

Williams contends that, even if the underlying facts of the proffered explanation are true, the proffered reason did not really motivate his termination. To succeed, Williams must "indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant," and ultimately show that it is "more likely than not" that his employer's proffered reason is pretext. *See Hedrick*, 355 F.3d at 460 (citing *Pennington v. Western Atlas, Inc.*, 202 F.3d 902, 909-10 (6th Cir. 2000)).

Williams first argues that he was actually terminated on the basis of his age. Williams cites an instance in which, when discussing how Williams's treatment might affect his health, Lee asked how old Williams was. The district court found that this was "not enough to support a finding of age discrimination in the decision to terminate [Williams's] employment months later." DE 44, Opinion, Page ID # 1087. Williams further asks the court to consider that he was eventually replaced by Pack, who was thirty-six years old at the time. The district court rightly considered the issue but found that such evidence was insufficient to establish that Williams's age was more likely the reason for his termination than the multiple accusations of inappropriate behavior against him. All of Lee's questions concerning Williams's age took place in a conversation regarding Williams's treatment for his recurrence of prostate cancer. Such an inquiry in context is

insufficient to demonstrate that Graphic Packaging terminated Williams's employment because of his age. Similarly, it is insufficient that Pack, who worked directly under Williams and temporarily worked in Williams's position during Williams's medical leave, was promoted to Williams's position after his termination.

Alternatively, Williams argues that he was terminated because of his medical leave for cancer treatment. His claim rests on the timing of the termination of his employment soon after his return from leave. "Although temporal proximity can demonstrate a causal connection for the purposes of a prima facie case, it alone cannot establish pretext." *Williams v. AT&T Mobility Servs., LLC*, 847 F.3d 384, 396 (6th Cir. 2017) (citation omitted). Williams disclosed his cancer diagnosis to Lee approximately one year before his termination; Graphic Packaging granted his request for medical leave three months prior to his termination. This timeline fails to demonstrate that it was more likely than not that Williams was terminated because of his medical leave.

Williams argues that Graphic Packaging failed to consider his positive performance reviews. But "the fact that [Williams] was a reliable employee with a good employment record is not relevant, as it proves no more than that absent any misconduct on [Williams's] part, [Graphic Packaging] was unlikely to terminate his employment." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 286 (6th Cir. 2012) (citation and internal quotation marks omitted). Similarly, Williams argues that written employee reports were unreliable because Flatt actually prepared the statement of one employee—Doyce Elkins—and then had Elkins sign it. Yet Elkins confirmed that he signed the short statement after it was provided to him by Flatt to review and revise. Williams has provided no evidence that Elkins's signed statement was somehow manipulated or unrepresentative.

Finally, the record does not show that Graphic Packaging engaged in a conspiracy to cover up the fact that Williams's termination was actually based on discrimination. For example, Williams highlights that Lee informed employees that Williams's termination "was not due to his health, it was due to other job-related activities." CA6 R. 21, Reply Br., at 14; DE 30-11, Jones Dep., Page ID # 775–76; DE 30-6, S. Williams Dep., Page ID # 693–94. This statement is entirely consistent with Graphic Packaging's reason for terminating Williams because of his inappropriate behavior on the job.

Similarly, Williams argues that Flatt engaged in a conspiracy to cover up discrimination by quoting Flatt's deposition in which he said "I didn't interview anybody," despite Flatt's report relying on interviews. CA6 R. 21, Reply Br., at 21; DE 30-3, Flatt Dep., Page ID # 571–72. Williams misrepresents this quotation. Flatt said, in his deposition, "I have a point correction. I didn't interview anybody, I asked them to provide me with their perception of their professional relationship with Mr. Williams; that was all I asked." DE 30-3, Flatt Dep., Page ID # 571–72. The statement supports Graphic Packaging's argument. Flatt was making it clear that the employees were responding to a single, open-ended question. Williams also argues that the employees were asked about previous incidents with Williams only after Flatt began his investigation. Such inquiries are entirely consistent with conducting an internal investigation. Williams's rhetorical questions concerning the possible motivations of the investigation are insufficient evidence of pretext. Williams has not satisfied his burden of showing that it is more likely than not that Graphic Packaging had a discriminatory intent when it fired him.

3.

Finally, Williams argues that his conduct was insufficient to warrant termination of his employment. *See Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 539 (6th Cir. 2014).

Such an argument "ordinarily[] consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff[.]" *Hedrick*, 355 F.3d at 461. Summary judgment is appropriate when a plaintiff fails to establish that those other employees, outside of the protected class, committed errors with the same "severity and frequency" as the plaintiff. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001). Employees are "similarly situated" when they have "the same supervisor, were governed by the same standards of conduct, and had committed the same . . . violations as Williams, without any 'differentiating or mitigating circumstances' that would merit different treatment." *AT&T Mobility Servs., LLC*, 847 F.3d at 398 (quoting *Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000)).

Williams asserts that Graphic Packaging treated two other similarly-situated employees more favorably: (1) Connie Hunt, who admitted to helping Williams cheat on a mandatory safety exam but was not terminated; and (2) Pack, who admitted that she had discussed the rumor regarding Lee's alleged molestation with one other employee but was not terminated. The district court held that neither employee was similarly situated because both were Williams's subordinates and neither engaged in the wide-ranging misconduct that formed the "totality of the basis for [Williams'] termination." DE 44, Opinion, Page ID #1080. The district court's holding was correct. Connie Hunt was not similarly situated because, as a supervisor, she did not report to Lee. Meanwhile, Pack was not similarly situated because she did not report to Lee at the time that she spoke about the rumor regarding Lee. Further, Williams has failed to provide any evidence that Hunt or Pack engaged in similar behavior other than these two discrete instances, which were far from the pattern of behavior that Graphic Packaging cited for Williams's termination.

C.

Williams next argues that Graphic Packaging violated the GINA.  It is "an unlawful employment practice for an employment agency to request, require, or purchase genetic information with respect to an individual or family member of the individual[.]"  42 U.S.C. § 2000ff-2(b).  GINA defines "genetic information" as information about a "genetic test" or the "manifestation of a disease or disorder in family members."  42 U.S.C. § 2000ff(4)(A).  A "genetic test" means "an analysis of human DNA, RNA, chromosomes, proteins, or metabolites that detects genotypes, mutations, or chromosomal changes."  42 U.S.C. § 2000ff(7)(A).

There are exceptions to this general prohibition, however.  In relevant part, if "an employer inadvertently requests or requires family medical history of the employee or family member of the employee," then the employer has not violated GINA.  42 U.S.C. § 2000ff-1(b)(1).  "The exception for inadvertent acquisition of genetic information also applies . . . where [a] manager . . . learns of genetic information from the individual . . . without having solicited or sought the information," 29 C.F.R. § 1635.8(b)(1)(ii)(C), or if the genetic information is obtained "in response to an ordinary expression of concern[.]"  29 C.F.R. § 1635.8(b)(1)(ii)(B).

> For example, the exception applies when the covered entity, acting through a supervisor or other official, receives family medical history directly from an individual following a general health inquiry (e.g., "How are you?" or "Did they catch it early?" asked of an employee who was just diagnosed with cancer)[.]

*Id.*

Williams now argues that Lee "repeatedly sought specific information from Williams about his doctor's opinions and condition – including his PSA ('prostate specific antigen') and familial cancer history."  CA6 R. 19, Appellant Br., at 63.  Williams stated, in deposition, that he voluntarily told three people at Graphic Packaging, including Lee, that cancer ran in his family.

Graphic Packaging never required or requested that Williams or anyone in his family submit to a genetic test. Williams admits that he was never required, as part of his employment, to provide genetic information; that Lee never disclosed his condition to anyone; that his disclosures were voluntary; and that no one at Graphic Packaging directed him to disclose his condition. Even the limited updates that Williams gave Lee concerning the progress of Williams's treatment were never at Lee's direction. The district court was correct to dismiss Williams's GINA claim. Lee never sought out any genetic information, except insofar as he expressed concern for Williams's health, which was covered under the exception.

D.

Williams contends that Graphic Packaging violated ERISA, which prohibits employers from terminating, or otherwise discriminating against, employees who choose to exercise a benefit to which they are entitled under their benefit plan. *See* 29 U.S.C. § 1140. The statute provides that it is "unlawful for any person to discharge . . . or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]" *Id*.

To establish a prima facie case of retaliation, Williams must demonstrate that (1) he was engaged in an activity that ERISA protects; (2) he suffered an adverse employment action; and (3) a causal link exists between his protected activity and the employer's adverse action. *Hamilton v. Starcom Mediavest Grp., Inc.*, 522 F.3d 623, 628 (6th Cir. 2008). The court applies the same burden-shifting analysis to Williams's ERISA claim as it does to his other discrimination claims. *Crawford v. TRW Auto. U.S. LLC*, 560 F.3d 607, 613–14 (6th Cir. 2009) (applying the *McDonnell Douglas* burden-shifting analysis to ERISA claims).

The Sixth Circuit has recognized two different kinds of claims under Section 1140: "(1) a 'retaliation' claim where adverse action is taken because a participant availed [him]self of an ERISA right; and (2) an 'interference' claim where adverse action is taken as interference with the attainment of a right under ERISA." *Hamilton*, 522 F.3d at 627–28. The plaintiff must demonstrate that the defendant had the specific intent to violate ERISA. *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997).

In support of his ERISA claim, Williams again provides circumstantial evidence in the form of two emails from Flatt. In the first, sent on December 8, 2015, to Evans, Flatt says that Williams "might be holding on for medical coverage[.]" DE 30-16, Flatt Email, Page ID # 876; DE 30-3, Flatt Dep., Page ID # 582–83. In the second, sent on December 2, 2015, Flatt says that he and Lee chose to suspend Williams "in order to neutralize the situation and support the business[.]" DE 30-16, Flatt Email, Page ID # 876.

In the alternative, Williams argues that he has direct evidence of Graphic Packaging's intent to interfere with his rights under ERISA. In *Smith v. Hinkle Manufacturing., Inc.*, the Sixth Circuit considered a claim brought by an employee who was terminated after her son was diagnosed with a serious medical condition. 36 F. App'x, 825 (6th Cir. 2002). As the court explained, "only the alleged statement of [a supervisor] might be thought to constitute direct evidence of an intent to economize on insurance premiums. Because [the supervisor] did not have the authority to fire [the plaintiff], however, we are not inclined to treat [the plaintiff's] version of the Makin conversation as 'direct' evidence of the employer's intent." *Id.* at 828.

Williams contends that his direct evidence is similar to that in *Smith* because "the district court . . . overlooked the fact that Lee made the decision to terminate Williams[.]" CA6 R. 19, Appellant Br., at 60. Therefore, he argues, Flatt's email, in which he says that Flatt and Williams

chose to suspend Williams "in order to neutralize the situation and support the business," is direct evidence of Graphic Packaging's intent to violate ERISA. This argument is flawed for two reasons.

First, it is misleading to say that Lee "made the decision to terminate Williams." The record establishes that a group of upper management, including Lee, the regional director of operations, the regional director of human resources, the second regional director of human resources, the vice president of human resources, and in-house counsel, had a phone call to discuss Flatt's recommendation and make a decision about Williams's employment. Williams admits that "[a]ll participants on the call agreed with the recommendation that Williams's employment with Graphic be terminated for violating Graphic's Core Values." DE 31, Plaintiff's Response Statement of Facts, Page ID # 966.

Second, there is no intent to violate ERISA demonstrated in Flatt and Lee's stated purpose of "neutraliz[ing] the situation and support[ing] the business." Flatt and Lee were presented with an employee who had previously abused and manipulated his employees and spread rumors about upper management. No doubt addressing, even "neutralizing," such a scenario would support the business. Flatt's email is insufficient to carry Williams's burden of demonstrating that Graphic Packaging intended to interfere with his exercise of ERISA beneits.

### E.

Finally, Williams argues that Graphic Packaging failed to provide accommodations upon his return from medical leave. Williams bore the burden of requesting a reasonable accommodation. *Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 350 (6th Cir. 2015). The request must have "[made] it clear from the context that it [was] being made in order to conform

with existing medical restrictions." *Leeds v. Potter*, 249 F. App'x 442, 450 (6th Cir. 2017) (citation omitted). Graphic Packaging argues that Williams failed to request any such accommodation.

Williams argues that he requested an accommodation when he told Lee in a meeting, before his FMLA leave, that he would "probably need some help" when he returned from his treatment and suggested "an office on the shop floor," so that he would not have to walk up and down steps. Yet, Williams has conceded that he was not sure he needed an accommodation. As he said during his deposition, "I mean, it was too far in the future to make that decision, I'm assuming." DE 24-1, Williams Dep., Page ID # 118. In response to the question, "Did you ever request an accommodation from Graphic Packaging International?" Williams simply answered, "No." *Id.* at 120. Such a preliminary conversation is insufficient to constitute a request for a reasonable accommodation.

III.

Williams has conceded that he engaged in many of the behaviors that clearly violated Graphic Packaging's Core Values. His only argument, therefore, is that the Core Value violations were merely pretext to justify Williams's termination, which was actually based on Graphic Packaging discriminating or retaliating against Williams. For the reasons discussed above, Williams has failed to demonstrate that his violations were merely pretext. Further, the district court was correct in dismissing his other claims because he voluntarily divulged his familial history with cancer, he has provided insufficient evidence that his termination was motivated by a desire to punish him for utilizing his medical leave, and he failed to request a reasonable accommodation. We thus affirm the judgment of the district court.